# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:17-CV-00122-MR

| | |
|---|---|
| SANDRA D. MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| NANCY A. BERRYHILL, ) | |
| Acting Commisioner of Social ) | |
| Security ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 9] and the Defendant's Motion for Summary Judgment [Doc. 11].

## I.  PROCEDURAL BACKGROUND

The Plaintiff, Sandra D. Moore ("Plaintiff"), asserts that her fibromyalgia, status post left tibia and fibula fractures with incomplete healing of tibia, depression, and anxiety constitute severe physical and mental impairments under the Social Security Act (the "Act") rendering her disabled. On June 12, 2013, the Plaintiff filed applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI

of the Act, respectively, alleging an onset date of January 31, 2013. [Transcript ("T.") at 206, 212]. The Plaintiff's applications were denied initially and upon reconsideration. [T. at 144, 153]. Upon Plaintiff's request, a hearing was held on February 26, 2016, before an Administrative Law Judge ("ALJ"). [T. at 33]. Present at the hearing were the Plaintiff; James W. Bond, Plaintiff's attorney; and a vocational expert ("VE"). [Id.]. On April 4, 2016, the ALJ issued a decision, wherein the ALJ concluded that the Plaintiff was not disabled. [Id. at 15-26]. On May 20, 2016, the Plaintiff requested that the Appeals Council review the ALJ's decision. [Id. at 9]. On March 7, 2017, the Appeals Council denied the Plaintiff's request for review [T. at 1], thereby making the ALJ's decision the final decision of the Commissioner. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to

uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III.   THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015).  "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted).  The burden is on the claimant to make the requisite showing at the first four steps.  Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity.  If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant.  Id. (citing 20 C.F.R. § 416.920).  If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof,

which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. SSR 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative

5

work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits. In this case, the ALJ rendered a determination adverse to the Plaintiff at step five.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date, January 31, 2013. [T. at 17]. At step two, the ALJ found that the Plaintiff has severe impairments including fibromyalgia, status post left tibia and fibula fractures with incomplete healing of the tibia, depression, and anxiety. [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [Id. at 18]. The ALJ then determined that the Plaintiff, notwithstanding her impairments, has the RFC:

> [T]o perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a) except simple, routine, repetitive tasks; occasional climbing, stooping, squatting, kneeling, bending; work that is

>      not around dangerous equipment or heights; and
>      sit/stand option.

[Id. at 19].

At step four, the ALJ identified Plaintiff's past relevant work as a hair stylist. [Id. at 24]. The ALJ observed, however, that because work as a hair stylist is "light in exertion and [specific vocational preparation] 6," the Plaintiff "is unable to perform past relevant work." [Id.].

With the Plaintiff having carried her burden through the first four steps, the ALJ then assessed whether, at step five, the Commissioner could meet her burden of showing the availability of jobs Plaintiff is able to do, given her RFC. [See id. at 25-6]. Based upon the testimony of the VE, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, including document preparer, charge account clerk, and order clerk. [Id.]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from January 31, 2013, the alleged onset date, through April 4, 2016, the date of the ALJ's decision. [Id.].

## V.   DISCUSSION[1]

In this appeal, the Plaintiff asserts two assignments of error.  First, Plaintiff contends the ALJ failed to comply with SSR 00-4p in failing to resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles (DOT) without first obtaining an explanation.  Second, Plaintiff contends the ALJ erred in failing to provide a function-by-function analysis of Plaintiff's mental limitations in the RFC assessment as required by SSR 96-8p. [Doc. 10 at 4-5].  The Plaintiff argues these errors require remand.  The Defendant, on the other hand, asserts that the Commissioner's decision accords with the proper legal standards and is supported by substantial evidence.  [See Doc. 12 at 16].

### A.   The VE Testimony

Plaintiff argues the ALJ improperly relied on the VE's determination that Plaintiff could work as a document preparer, charge account clerk, and order clerk.  Plaintiff contends that these jobs require a reasoning level of "3" and that this is inconsistent with the RFC assessment limiting Plaintiff to simple, routine, repetitive tasks.  Level 3, according to the DOT, requires a person to:

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

> Apply common sense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

DOT, Appendix C, Section III. "There is no direct correlation between the DOT's reasoning levels and a limitation to carrying out simple instructions or performing simple work; thus, jobs requiring an individual to perform such work [are] consistent with a DOT reasoning level of either 2 or 3." Martin v. Colvin, No. 1:14-cv-234, 2015 WL 9094738, at *5 (W.D.N.C. Dec. 16, 2015 (Voorhees, J.) (quoting Carringer v. Colvin, No. 2:13-cv-00027-MOC, 2014 WL 1281122, at *3 (W.D.N.C. Mar. 27, 2014) (Cogburn, J.); see also Clontz v. Astrue, No. 2:12-cv-00013, 2013 WL 3899507, at *5 (W.D.N.C. July 29, 2013) (Whitney, J.); Thacker v. Astrue, No. 3:11-cv-246-GCM-DSC, 2011 WL 7154218, at *4 (W.D.N.C. Nov. 28, 2011) (Cayer, J.); Williams v. Astrue, No. 3:11-cv-592, 2012 WL 4756066, at *4 (W.D.N.C. Aug. 27, 2012) (Cayer, J.). While Plaintiff cites to several cases in which other courts found an inconsistency between an RFC limiting a claimant to simple, routine, repetitive tasks and a job with a DOT classification of a reasoning level three [Doc.10 at 9-10], these cases, to the extent they support Plaintiff's position, are not dispositive. Courts in the Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits have held there is no conflict between a job classified at reasoning level three and a limitation to simple, routine, unskilled work.

See Williams, 2012 WL 4756066, at *4 (collecting cases). As there was no inconsistency to resolve, the ALJ did not err in accepting the VE's testimony that Plaintiff could perform the jobs of document preparer, charge account clerk, and order clerk despite her limitations.

**B.    The RFC Assessment**

Plaintiff argues the ALJ failed to provide a complete function-by-function assessment of the Plaintiff's work-related mental abilities in his RFC as required by Social Security Ruling 96-8p. Specifically, Plaintiff contends the ALJ failed to account for Plaintiff's limitations in concentration, persistence or pace and social functioning. [Doc. 10 at 12-17].

Social Security Ruling 96-8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.[2] SSR 96-8p; see also Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (finding that remand may

---

[2] The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting;" and (3) other work-related abilities affected by "impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945.

be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted).

When a plaintiff's claim is based on mental health impairments, the Social Security Rules and Regulations require a much more in-depth review and analysis of the plaintiff's past mental health history. The Regulations make plain that "[p]articular problems are often involved in evaluating mental impairments in individuals who have long histories of … prolonged outpatient care with supportive therapy and medication." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E. The Regulations, therefore, set forth a mechanism for this type of review and documentation, known as the "special technique," to assist ALJs in assessing a claimant's mental RFC. See SSR 96-8p; 20 C.F.R. §§ 404.1520a, 416.920a. The special technique "requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' of the adult mental disorders listings." SSR 96-8p. Paragraph B of the listings provides the functional criteria assessed, in conjunction with a rating scale, to evaluate how a claimant's mental disorder limits her functioning. These criteria represent the areas of mental functioning a

person uses in the performance of gainful activity.[3]  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A.  The paragraph B criteria include restrictions in activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.  Id.  The ALJ uses the special technique to "evaluate the severity of mental impairments … when Part A of the Listing of Impairments is used."  20 C.F.R. § 404.1520a(a).

> Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s)….  If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings[.]

20 C.F.R. § 404.1520a(b).

With regard to mental health issues, "[t]he determination of mental RFC is crucial to the evaluation of your capacity to do [substantial gainful activity] when your impairment(s) does not meet or equal the criteria of the listings, but is nevertheless severe."  20 C.F.R. Pt. 404, Subptd. P, App. 1, §

---

[3] Like paragraph B, the criteria described in paragraph C also "describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A.  In this case, the ALJ found that the "record also fails to establish the presence of the 'paragraph C' criteria."  [T. at 19].  Plaintiff does not assign error to this finding.  The Court, therefore, does not further address the paragraph C criteria in this opinion.

12.00A. The RFC assessment is formulated in light of a claimant's physical and mental impairments. Rule 96-8p provides:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].

SSR 96-8p. Rule 96-8p further explains as follows:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

Id. "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id.

In this case, the ALJ failed to conduct a complete function-by-function analysis of Plaintiff's mental health limitations and work-related abilities prior

13

to expressing his RFC assessment in accordance with Rule 96-8p. [See T. at 18-19]. At step three, in deciding Plaintiff's mental impairments did not meet or medically equal the paragraph B criteria in listing 12.04 (depressive, bipolar and related disorders) or 12.06 (anxiety and obsessive-compulsive disorders), the ALJ made findings on Plaintiff's limitations and difficulties relative to activities of daily living; social functioning; and concentration, persistence or pace; and episodes of decompensation. [Id. at 18-19]. Specifically, the ALJ found that the Plaintiff suffers from mild difficulties in activities of daily living and social functioning and from moderate difficulties in concentration, persistence or pace. [Id. at 18].

By making these findings at step three, the ALJ found that facts exist which correlate with a limitation on Plaintiff's ability to carry out the areas of mental functioning listed in paragraph B. In formulating the Plaintiff's RFC, however, the ALJ failed to fully explain whether these limitations translated into any actual functional limitations.

It appears the ALJ sought to account for Plaintiff's "moderate difficulties" in "concentration, persistence or pace" by restricting Plaintiff to "simple, routine, repetitive tasks." [T. at 19]. Such a restriction, however, does not "account for a limitation in concentration, persistence or pace." See Mascio, 780 F.3d at 638; see also Kitrell v. Colvin, No. 5:14-cv-163-RJC,

2016 WL 1048070, at *4 (W.D.N.C. March 6, 2016) (Conrad, J.); Scruggs v. Colvin, No. 3:14-cv-466-MOC, 2015 WL 2250890, at *5-6 (W.D.N.C. May 13, 2015) (Cogburn, J.). A reviewing court cannot be "left to guess about how the ALJ arrived at his conclusions on [a plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended." Mascio, 780 F.3d at 637. It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citation omitted). As such, the Court must remand the case on this ground.

The Plaintiff also argues that, in formulating the RFC, the ALJ failed to address the Plaintiff's mild restriction in social functioning and that remand is required on this ground as well. [Doc. 10 at 15-17]. The Defendant argues that the fact that the ALJ's RFC assessment "did not need to include any limitations in social functioning was well explained and supported by substantial evidence and should be affirmed." [Doc. 12 at 14].

In applying the paragraph B criteria during step two of the sequential evaluation, the ALJ found that the Plaintiff only had mild limitation in social functioning. The limitations identified in the paragraph B criteria, however, are used only to rate the severity of mental impairments at step two and three and are not part of the RFC assessment. See SSR 96-8p. The mental RFC assessment requires a more detailed assessment of various functions contained in the broad categories identified by paragraph B. Furthermore, in assessing the RFC, the ALJ must consider *all* of the limitations and restrictions imposed by the claimant's impairments, even if such impairments were not found to be severe at step two. See id.; 20 C.F.R. § 416.945(e).

Remand, however, is not necessarily required in every case where the ALJ fails to conduct an explicit function-by-function analysis. As the Fourth Circuit stated in Mascio, a *per se* rule requiring remand would be inappropriate "given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" 780 F.3d at 636 (citation omitted). Rather, as the Mascio Court instructed, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (citation and internal quotation marks omitted). "For this reason, the

treatment of functional limitations arising from minor, mild mental health restrictions need not be as extensive and detailed as the treatment required regarding moderate restrictions. Mascio requires only that they be addressed adequately." Helms v. Berryhill, No. 5:16-cv-00229-MR-DLH, 2018 WL 1472489, at *6 (W.D.N.C. Mar. 26, 2018) (Reidinger, J.).

Here, the ALJ did not fail to provide an adequate explanation for his assessment of Plaintiff's mild limitation in social functioning. To the contrary, the ALJ sufficiently referenced the evidence and provided substantial detail and explanation regarding this limitation. Namely, the ALJ noted that the Plaintiff uses email and Facebook, goes out to eat, attends church, vacations with family once a year at the beach, and was able to work for many years despite her symptoms. Additionally, the ALJ explained that the Plaintiff was noted by examiners to be "pleasant and cooperative" and with a "happy mood and normal affect." [T. at 18, 23]. Also, "in assessing the severity and limiting effects of the [Plaintiff's] mental impairments," the ALJ discussed the opinions of the State agency psychological consultants and of a consultative examiner and concluded that "the evidence is insufficient to show any specific limitations in social functioning." [Id. at 24].

In sum, the Court concludes that the ALJ's treatment of Plaintiff's mild mental health impairment in social functioning was adequate to satisfy Mascio.

**VII. CONCLUSION**

For the reasons stated, the Court will remand this case for further administrative proceedings.[4] Upon remand, the ALJ must comply with the proper procedure for assessing the Plaintiff's mental impairments *before* expressing an RFC determination. See Mascio, 780 F.3d at 636; Patterson v. Comm'r Soc. Sec. Admin., 846 F.3d 656, 659 & 662 (4th Cir. 2017). It will be crucial that the ALJ carefully perform a function-by-function analysis of Plaintiff's mental limitations and work abilities, and thereafter "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189 (citation omitted). A narrative assessment describing how the evidence supports each conclusion, as required by SSR 96-8p, is essential and should account for Plaintiff's limitation in concentration, persistence or pace; and social functioning and activities of daily living, if any;

---

[4] The Court notes that to the extent that Plaintiff attempts to weave any other disparate legal arguments or errors into her assignments of error, the Court disregards those arguments. [See Doc. 10 at 12-20]. Such arguments must be set forth in separate assignments of error to be considered by this Court. See e.g. Gouge v. Berryhill, No. 1:16-cv-00076-MR, 2017 WL 3981146, at *2 (W.D.N.C. Sept. 11, 2017) (Reidinger, J.) (collecting cases). In the future, the Court instructs counsel for Plaintiff to separately set forth each alleged error both so that the Court may consider them and to aid counsel in analyzing the proper framework and legal bases for these arguments.

and include an assessment of whether Plaintiff can perform work-related tasks for a full work day.  See Scruggs, 2015 WL 2250890, at *5 (applying Mascio to find an ALJ must not only provide an explanation of how a plaintiff's mental limitations affect her ability to perform work-related functions, but also her ability to perform them for a full workday).

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 9] is **GRANTED** and the Defendant's Motion for Summary Judgment [Doc. 11] is **DENIED**.  Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion.  A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: July 23, 2018

Martin Reidinger
United States District Judge